WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Krista Purnell, | No. CV-14-02716-PHX-ESW |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Defendant's "Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e)" (Doc. 33). For the reasons set forth herein, the Motion (Doc. 33) is denied.

## **I. DISCUSSION**

### **A. Federal Rule of Civil Procedure 59(e)**

Under Rule 59(e) of the Federal Rules of Civil Procedure, a party may file a "motion to alter or amend a judgment." The Ninth Circuit has explained that

> [s]ince specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc) (per curiam) (internal quotation marks omitted). But amending a judgment after its entry remains "an extraordinary remedy which should be used sparingly." *Id.*

1
2
3
4
5
6

> (internal quotation marks omitted).  In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law. *Id*.

7
8
9
10

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1112 (9th Cir. 2011).  Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been made prior to the entry of judgment."  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (citation omitted).

11

### B.  Analysis of Defendant's Motion (Doc. 33)

12

### 1.  First Ground for Rule 59(e) Relief

13
14
15
16
17
18

Defendant argues that the Court "erroneously concluded that a presumption of continuing disability applies in the Plaintiff's favor in medical improvement cases involving a closed period of disability, contrary to the 1984 amendment to the Social Security Act, establishing this determination is to be made on a 'neutral' basis."  (Doc. 33 at 3).   This is similar to the argument made in Defendant's Response to Plaintiff's Opening Brief:

19
20
21
22
23
24

> At the outset, Plaintiff incorrectly asserts the ALJ failed to meet the Commissioner's burden of producing evidence sufficient to overcome a presumption of continuing disability in this case. *See* Tr. 241 (claiming the Commissioner must rebut a 'presumption of continuing disability').  Since the 1984 Amendments to the Social Security Act addressing the medical improvement standard, however, Congress has specifically rejected the concept of presumed continuing disability.

25
26
27

(Doc. 25 at 5-6).  Defendant's argument is contrary to the definition of a presumption of law.  Defendant's argument is also contrary to legislative history pertaining to the 1984 amendments to the Social Security Act, which is summarized below.

28

1
2
3
4
5
6
7
8
9
10
11

From 1969 to 1976, it was the Social Security Administration's ("SSA") policy to not terminate benefits for anyone whose condition had not improved since the initial determination of eligibility.  H.R. Rep. No. 98–618, 98th Cong., 2d Sess. 1984, 1984 WL 37436, at *9.   But that policy was reversed in 1976 in internal SSA directives.  *Id*.  In the 1970s, the rate of benefit terminations due to a beneficiary's recovery or return to work significantly fell.   *Id*. at *9-10.   "As a result, congressional interest was expressed, beginning in 1978, in requiring SSA to look at people who had been receiving benefits for a long time to see if they were still eligible."  *Id*. at 10.   Legislators found that "SSA's standard procedures for re-examining only a small number of beneficiaries seemed to be inadequate in light of the declining number of benefit terminations for return to work."  *Id*.

12
13
14
15
16
17
18
19

In 1980, "Social Security Disability Amendments made a number of significant changes in disability program operations."  *Id*.  "[T]he legislation required a dramatic increase in the amount of management review and oversight of the program, with the objective of tightening central federal control . . . and re-invigorating ongoing review of current beneficiaries."  *Id*.  One amendment required review at least once every three years of all beneficiaries not permanently disabled, beginning in January 1982.  *Id*.  The Department of Health and Human Services moved up the implementation date of that amendment and accelerated the rate of review.  *Id*.

20
21
22
23
24
25

"Beginning in March 1981, SSA began sending out about three times the normal number of [continuing disability investigation] cases . . . ."  *Id*.  In 1984, the rate of termination in those cases on initial review was about forty-five percent.  *Id*.  The re-examination of large numbers of disability beneficiaries "resulted in termination of benefits for many beneficiaries whose medical condition [had] not changed substantially since they were allowed benefits."  *Id*. at *11.

26
27
28

SSA's policies were severely criticized in federal courts, "particularly in the Ninth Circuit Court of Appeals which ha[d] ruled twice that SSA must demonstrate either medical improvement or (in the later ruling) clear and specific error in the original award,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

in order to terminate disability benefits." *Id.* In *Finnegan v. Matthews*, 641 F.2d 1340, 1344-45 (9th Cir. 1981), the Ninth Circuit Court of Appeals held that in determining whether to terminate an individual's disability benefits, an ALJ must "focus on whether a clear and specific error had been committed during the previous state determination of eligibility and on whether the recipient's medical condition has materially improved." In *Patti v. Schweiker*, 669 F.2d 582, 587 (9th Cir. 1982), the Ninth Circuit Court of Appeals held that a determination that a claimant is disabled gives rise to a presumption that the disability is continuing and SSA must "meet or rebut" that presumption with substantial evidence that the claimant's condition has improved.

As the Ninth Circuit explained in a 1983 decision, the Secretary of the Department of Health and Human Services[1] announced that she did "not acquiesce in" and would not follow the holdings in *Patti* and *Finnegan*. *Lopez v. Heckler*, 713 F.2d 1432, 1434 (9th Cir. 1983). "Instead, the Secretary has ordered that Social Security disability benefits be terminated on the ground of lack of disability *regardless* of whether the recipient's medical condition has improved since the time of the initial disability determination." *Id.* (citing Social Security Ruling 81–6) (emphasis added).

In 1984, legislators recognized that the problems with SSA's review of ongoing benefits arose, "at least in part, because the criteria for termination of benefits as a result of review were [left] unstated in the law." H.R. Rep. No. 98–618, 1984 WL 37436, at *11. SSA "had wide discretion to apply whatever standards it deemed appropriate." *Id.* Legislators acknowledged that the standards for obtaining disability benefits had become stricter, and that applying those stricter standards to existing beneficiaries resulted in the elimination of "benefits for many more beneficiaries than was anticipated when the 1980 amendments were enacted." *Id.*

---

[1] At the time, SSA was part of the Department of Health and Human Services. SSA became an independent agency in 1995. *See* Social Security Independence and Program Improvement Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464 (1994).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The 1984 amendments to the Social Security Act "provide[d] for the first time in the Social Security statute a specific standard that must be met before a disability beneficiary can be found to be not disabled." *Id*. at *9.   Contrary to Defendant's assertion, the amendments reflect "Congress's decision in 1984 to **codify** the presumption that *Patti* created."   *Warren v. Bowen*, 804 F.2d 1120, 1121 (9th Cir. 1986) (emphasis added).

Defendant takes issue with a footnote in the Court's Order that explains that "[a]n inference is not the same as a presumption."   After citing definitions provided by an online dictionary, Defendant states: "It makes no sense to say Congress prohibited inferences, but still allows presumptions."   Like Defendant, courts and laymen sometimes use the term "presumption" as a synonym for an inference.  2 HANDBOOK OF FED. EVID. § 301:6 (7th ed. 2015).   But a presumption of law is different from an inference.   "An inference is distinguished from a presumption in that in an inference, the existence of Fact B may be deduced from Fact A by the ordinary rules of reasoning and logic whereas in a presumption, the existence of Fact B must be assumed because of a rule of law." Jack B. Weinstein, Margaret A. Berger & Joseph M. McLaughlin, WEINSTEIN'S FEDERAL EVIDENCE, §301.02[1] (2010).   Even after a presumption has been rebutted, the factual question at issue remains to be decided by a fact finder who may choose to draw factual inferences from the evidence.  *See, e.g., In re Yoder*, 758 F.2d 1114, 1119 n.8 (6th Cir. 1985) ("The facts giving rise to the presumption often give rise to an inference that remains and may still be considered by the factfinder."); *Nunley v. City of Los Angeles*, 52 F.3d 792, 796-97 (9th Cir. 1995) (holding that a district court erred in denying request to reopen the time to appeal a judgment by improperly applying the rebuttable presumption that the movant received the judgment, and stating that "Regardless of the quantum of evidence necessary to rebut the presumption, the movant still bears the burden of proving non-receipt [of notice of the entry of judgment]. . . . Even after the "bubble" of presumption has "burst," the factual question of receipt remains and may be

- 5 -

1
2
decided in favor of receipt by a fact finder who may choose to draw inferences of receipt

from the evidence of mailing, in spite of contrary evidence.") (citing Fed. R. Evid. 301).

3
4
Congress decided that the medical improvement determination is to be made

neutrally, "without any initial inference as to the presence or absence of disability being

5
6
drawn from the fact that the [claimant] has previously been determined to be disabled."

Prohibiting such an inference does not eliminate SSA's burden to produce evidence

7
8
showing that a beneficiary's medical condition has improved and does not eliminate

SSA's obligation to follow other regulatory procedures in making its determination.[2]

9
10
For the above reasons, Defendant's first ground for Rule 59(e) relief is found to be

meritless.

11
### 2.  Defendant's Second Ground for Rule 59(e) Relief

12
The ALJ determined that a medical improvement occurred as of October 27, 2013.

13
In the section explaining the reasons for this finding, the ALJ stated:

14
15
16
17
18
19
> As discussed in detail below, the consultative examiners
> findings revealed that there was medical improvement in
> [Plaintiff's] ability to function.  The examining physician
> observed that [Plaintiff's] muscle strength in all motor groups
> was intact with no weakness or atrophy noted (Exhibit 14F).
> There was no muscle spasm or tenderness observed and the
> examining physician concluded that [Plaintiff] retained the
> residual functional capacity to perform work at all exertional
> levels.

20
21
22
23
(A.R. 23).   The ALJ did not provide any additional reasons for finding medical

improvement in the section in which the finding was stated.   The ALJ's phrase "as

discussed in detail below" was a reference to the analysis of Plaintiff's RFC after October

26, 2013.

24
25
26
27
28
---

[2] This burden is acknowledged in the ALJ's decision where the ALJ wrote: "In order to find that the claimant's disability does not continue through the date of decision, the undersigned must show that medical improvement has occurred which is related to the claimant's ability to work, or that an exception applies (20 CFR 404.1594(a))."  (A.R. 16).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In its Order, the Court stated that an "ALJ may not move to the evaluation of a claimant's RFC without first finding medical improvement, and the Act does not authorize an ALJ to find medical improvement without making the comparison of prior and current medical evidence."  (Doc. 32 at 10) (citation omitted).  Because the ALJ in this case proceeded to the RFC assessment without first satisfying the ALJ's obligation under 20 C.F.R. § 404.1594(b)(7) to compare Plaintiff's prior and current medical evidence in determining whether medical improvement has occurred, the Court found harmful error.  Defendant asserts that the Court has applied a "narrow approach" that is in direct contravention of *Attmore v. Colvin*, --- F.3d ----, 2016 WL 3563596, at *3 (9th Cir. June 30, 2016), which the Ninth Circuit issued shortly after the Court's Order.

*Attmore* does not contravene the proposition in the Court's Order that an "ALJ may not move to the evaluation of a claimant's RFC without first finding medical improvement, and the Act does not authorize an ALJ to find medical improvement without making the comparison of prior and current medical evidence."  Nor does *Attmore* contravene the application of that principle in closed period cases.  Indeed, *Attmore* instructs that "an ALJ should 'engage[ ] in the same decision-making process' in closed period cases as in ordinary termination cases." 2016 WL 3563596, at *3 (quoting *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002)).  Thus, the Ninth Circuit held that "in closed period cases, the ALJ should compare the medical evidence used to determine the claimant was disabled with the medical evidence existing at the time of possible medical improvement." *Id*.

Further, the administrative decision at issue in *Attmore* is distinguishable from the ALJ's decision in this case.  The Ninth Circuit recounted the ALJ's decision in *Attmore* as follows:

> Based on [the] medical evidence, the ALJ determined Attmore was disabled between April 15, 2007 and March 23, 2009. At issue here is the ALJ's medical improvement finding, which rested on two conclusions. The ALJ first detailed Dr. Wolf's treatment notes from March 23, 2009 and concluded Attmore had "benefited from mental health

- 7 -

1
2
3
4
5

> treatment and medication management and ha[d] experienced gradual improvement in her symptoms." The ALJ then cited additional treatment notes and concluded Attmore had "shown improvement in the area of social functioning." Based in part on the medical improvement finding, the ALJ awarded Attmore benefits only for the closed period from April 15, 2007 through March 23, 2009.

6      *Id*. at *2.

7      On appeal, Attmore argued that the decision contained harmful error because it did

8    not specifically identify the baseline for comparison when determining that medical

9    improvement had occurred. However, the Ninth Circuit observed that the ALJ "made

10   extensive findings" that Attmore was disabled from April 15, 2007 through March 23,

11   2009. *Id*. at *4. In finding medical improvement as of March 24, 2009, the ALJ noted

12   that the claimant "benefited from mental health treatment and medication management"

13   and "experienced gradual improvement in her symptoms." *Id*. The Ninth Circuit

14   concluded that "the ALJ's references to 'improvement' implied a comparison to

15   Attmore's condition during the disability period, which the ALJ had just discussed." *Id*.

16   The Ninth Circuit inferred that the ALJ compared the medical evidence from the date of

17   possible improvement to the medical evidence used to determine that Attmore was

18   disabled and found no legal error. *Id*.

19   Here, unlike the administrative decision at issue in *Attmore*, the ALJ did not

20   discuss recent medical records before making the finding that medical improvement had

21   occurred. Instead, the ALJ stated: "As discussed in detail below, the consultative

22   examiners [sic] findings revealed that there was medical improvement . . . ." Although

23   the ALJ discussed recent medical records when discrediting Plaintiff's testimony

24   regarding the intensity, persistence, and limiting effects of her symptoms, the Court

25   cannot draw a "specific and legitimate" inference that in finding medical improvement,

26   the ALJ compared the recent medical evidence to the medical evidence used to determine

27   that Plaintiff was disabled from September 28, 2012 through October 26, 2013. The

28   Court's Order gives meaning to the plain language of the ALJ's decision—medical

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

improvement was found based on the October 26, 2013 examination with a consulting physician, who did not review Plaintiff's medical records.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (explaining that although courts do not fault the agency "merely for explaining its decision with 'less than ideal clarity,' the agency must clearly state its reasoning because the court can affirm the agency's decision to deny benefits only on the grounds invoked by the agency) (quoting *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  The ALJ's decision does not adequately show that the ALJ applied proper legal standards in finding medical improvement.  The Court finds that Defendant's second ground for Rule 59(e) relief is without merit.

## II.  CONCLUSION

Defendant has not presented a valid basis for granting Rule 59(e) relief. Accordingly,

**IT IS ORDERED** denying Defendant's "Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e)" (Doc. 33).

Dated this 9th day of September, 2016.

_____

Eileen S. Willett
United States Magistrate Judge